SARGENT (ROGERS v.). See Case No. 12,-020.

SARGENT (SANGER v.). See Case No. 12,-319.

## Case No. 12,365.

### SARGENT et al. v. SEAGRAVE.

[2 Curt. 553.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1855.

PATENTS—PRELIMINARY INJUNCTION—PUBLIC ACQUIESCENCE—REQUISITES—POSSESSION—DOUBT OF VALIDITY.

1. Though strictly speaking, there can be no possession of the exclusive right to an invention, until the letters-patent therefor are granted, yet under out patent laws, the inventor may make and sell, and the public may acquiesce in his claim of right, for two years before his application for letters-patent; and such acquiescence may be entitled to weight, in considering his title to a preliminary injunction.

[Cited in Tappan v. National Bank Note Co., Case No. 14,100; Andrews v. Hovey, 124 U. S. 705, 8 Sup. Ct. 679; Blount v. Societe Anonyme Du Filtre, 53 Fed. 103; Thomson Electric Welding Co. v. Two Rivers Manuf'g Co., 63 Fed. 122.]

2. To make a prima facie title, without a judgment at law, the patentee must have had such an exclusive possession with the acquiescence of the public, as lays a reasonable foundation for the presumption of the validity of his patent. No precise length of time can be prescribed, during which the possession must have continued. It depends on the extent as well as the duration of the use or sales of the patentee, the degree of utility of the invention, the number of persons whose interest it is, to question the exclusive right, and the completeness of the acquiescence in it.

[Cited in Rein v. Clayton, 37 Fed. 357; Carter & Co. v. Wollschlaeger, 53 Fed. 576; Corbin Cabinet Lock Co. v. Yale & Towne Manuf'g Co., 58 Fed. 565.]

3. An unsuccessful attempt to interrupt the patentee's possession, strengthens the presumption in his favor.

[Cited in Hat-Sweat Manuf'g Co. v. Davis Sewing-Mach. Co., 32 Fed. 402.]

4. Where sufficient possession is made out, a doubt as to the validity of the patent will not necessarily prevent an injunction. The court will look to the circumstances, and the comparative inconvenience or loss to be occasioned by granting or withholding it.

[Cited in Earth Closet Co. v. Fenner, Case No. 4,249; Hat-Sweat Manuf'g Co. v. Davis Sewing-Mach. Co., 32 Fed. 403.]

[This was a bill in equity by James Sargent and others against Joseph D. Seagrave.]

This was an application for a preliminary injunction, before a trial at law, to protect the exclusive right of the complainants under letters-patent for an improvement in a machine for paring apples, and other vegetables. The letters-patent [No. 10,078] bore date on the fourth day of October, 1853. and this motion was heard on the ——— day of November, 1855. The bill alleged, and the affidavits showed a claim and exercise of the exclusive inchoate right, before the date of

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

the letters-patent for nearly two years before the date of the patent, as well as subsequent to their date, in the manner and to the extent stated in the opinion of the court.

Geo. T. Curtis (with whom was Mr. Devens), for the motion.

Jenckes & Hayes, contra.

CURTIS, Circuit Justice. This is a motion for a preliminary injunction to restrain the defendant from violating the exclusive right of the complainants to make, use, and sell an improvement in a machine for paring fruit and vegetables. Under a former decision of this court,—Sargent v. Larned [Case No. 12,364],—machines, like those now produced and admitted to have been made and sold by this defendant, were held to infringe this patent; and no question on that point is made, at this time.

No answer has yet been filed, but the validity of the letters-patent is denied by an affidavit of the defendant. He produces several machines, in respect to which, there is evidence that they existed before the invention, on which these letters-patent are founded. On the former hearing above referred to, I had occasion to examine each of these machines, and I then arrived at the conclusion, that it was so far doubtful whether these, or either of them embraced the complainants' improvement, that it was proper the defendant should have opportunity to try that question by a jury, before a perpetual injunction should go.

I do not state here the precise grounds of that doubt, because I am not willing in any degree to prejudge the question the jury must try, and I prefer to reserve my views till the witnesses shall have been examined. But I will indicate generally, that though I thought others had approached more or less nearly to the complainants' invention, yet I was not satisfied, that his improvement had been so far perfected, and reduced to practice by them, or either of them, that the ground was preoccupied.

Still, I thought a more full investigation, with the aid of a jury, might produce that result, and therefore, that it was proper to allow the defendant, if he should so elect, to make the attempt before he should be finally enjoined.

In this state of my views on this subject, I am asked to grant a temporary injunction until the right can be tried at law.

The ground upon which the plaintiffs rest their claim, is an exclusive possession of the right, and the acquiescence of the public therein since the issue of the letters-patent, a period of about two years, and also the acquiescence of the public in their claim of a right under a caveat, for about two years before the date of the patent.

I have stated the position in this form, because it is quite plain, that, strictly speaking, there can be no possession of the exclusive

right before the date of the patent; because the patent grants that right. But it is equally clear, that, both before and since the patent act of 1839 (5 Stat. 353), an inventor might exercise a claim to an inchoate right, which was capable of being perfected into a complete exclusive right, by obtaining letters-patent; and that the public may acquiesce in this last-mentioned claim. Thus before the act of 1839, the inventor might, in the course of experimental trials of his invention, bring it to the knowledge of the public, and at the same time make known, that he was about to apply for a patent, to secure to him the exclusive right therein. This would be a claim to such inchoate right on his part; and if no one should construct the machine, that would be evidence of an acquiescence, by the public, in his claim. And since the act of 1839, he may sell any number of his machines to the public, during any period less than two years, accompanied by a claim to the inchoate right, sufficient to show an intention not to abandon it to the public. This would be evidence that he made such a claim; and so far as the public should purchase of him, and not construct themselves, it is evidence of the public acquiescence in his inchoate right, more or less strong according to the number of instances of such sales, and the importance of the machine to the public. And, although this is evidence of claim and acquiescence only in the inchoate right, and not in the completed legal right upon which the complainants rely here, yet, in my judgment, it is not without weight. In Gayler v. Wilder, 10 How. [51 U. S.] 477, it was held, that where an inventor assigned his invention, and then took letters-patent in his own name, the legal title under the patent enured, by force of the assignment, to the assignee. Because the right granted by the patent was the same, in a complete state, as the assignment conveyed in an inchoate state. And when the inventor asserts this inchoate right, and the public acquiesces in it, the claim, and the acquiescence therein, relate to the same right afterwards perfected by the patent. Not that I think such a claim and acquiescence would alone be sufficient, in any case which has occurred to me. But it must be taken along with the other facts respecting possession, and may have a tendency to fortify the prima facie title of the patentee.

It appears that during the period which elapsed between the invention, and the date of the patent, the complainants made and sold about 11,000 of these machines; and that, since that date, they have made and sold 105,000, at an average profit of about thirty-five cents each; and there is evidence tending to prove that large dealers have bought of the complainants, great numbers of these machines, paying them what was considered by them a high price, having reference only to the labor and materials necessary to build them. Nor is there any evidence of such an interruption of the exclusive possession of the complainants, as has any tendency to weaken the presumption in favor of their title, arising from their enjoyment, and the acquiescence of the public therein. An unsuccessful attempt to interrupt a possession strengthens the presumption which arises from it. It tends to show that persons have found it for their interest to question the right, that they have questioned it, and for a time have refused to submit to it; but on inquiry have submitted. Such submission is the most persuasive kind of acquiescence. There can be no doubt that the evidence of acquiescence by the public, in the exclusive enjoyment of this right by the complainants, is ample, provided it has been of sufficient duration in point of time. In Foster v. Moore [Case No. 4,978], I had occasion to consider a similar question, and came to the conclusion that it was not possible to fix any term of years, during which the exclusive possession must have continued; but that each case must depend on its own circumstances. Those circumstances being the extent of the use or sales by the patentee, the degree of utility of the invention, and the number of persons whose business is affected by it, and who are interested to question the exclusive right, and the completeness of the acquiescence in it. In Orr v. Littlefield [Id. 10,590], my predecessor came to the same conclusion. The cases he has collected fully support the position.

Considering the circumstances of this case, I think the duration of the possession sufficient. The number of persons who have purchased these machines of the complainants, is far greater than it has been, in any other case with which I am acquainted. The profit of manufacturing them, and the consequent inducement to deny their exclusive right are also great. Nor do I disregard some other special circumstances. The plaintiffs obtained a final decree in equity against the brother of the defendant, perpetually enjoining him from further infringement of the patent. It is true, this was on the footing of a covenant, by which he had estopped himself from making the machines. It is true also, that it was and is open to the defendant, to contest the validity of the complainants' title. But, of several persons, who have a right to contest a title, one may have a better defence to an application for a preliminary injunction than another. The court looks to the particular circumstances, to see what degree of inconvenience would be occasioned to one party or the other, by granting or withholding the injunction; and whether the defendant has voluntarily placed himself in the position to be subject to that inconvenience. Now it is admitted, that the defendant began to manufacture these machines, after he knew his brother had been enjoined, and that the court had decided that to make them was an infringement of the complainants' patent. He voluntarily assumed the position of infringing an existing patent, in the validity of which, his brother had so far acquiesced as to be enjoined, and in the validity of which great numbers of other persons had acquiesced. This does not prevent him from contesting its

validity. But it does prevent him from alleging that any particular hardship attends his case, when the court decides that the apparent title of the plaintiffs is such, that he must refrain from further infringing, until he has proved the invalidity of the patent on a trial at law.

It was argued, that inasmuch as the court, upon an examination of the defendant's evidence, has some doubt concerning the validity of the patent, there should be no injunction. But I take it to be settled, that sufficient possession, such as I consider to be proved in this case, will outweigh graver doubts than I entertain. Lord Eldon, in Harmet v. Plane, 14 Ves. 130, said, possession would warrant an injunction even where great doubt was felt, whether the patent was valid; and if I understand his views of that case correctly, he had quite a decided opinion that the specification must prove defective on the trial which he ordered. Yet he retained the injunction.

Let an injunction issue till the further order of the court. But it will be dissolved, unless the complainants bring the action at law to trial at the next term, or then show sufficient cause for not doing so.

[For other cases involving this patent, see Cases Nos. 12,362 and 12,364.]