## HAT-SWEAT MANUF'G CO. *v.* DAVIS SEWING-MACHINE CO.

*(Circuit Court, N. D. New York. October 14, 1887.)*

PATENTS FOR INVENTIONS—INFRINGEMENT—INJUNCTION.

On motion for preliminary injunction, it appeared that the utility and value of the patent (letters patent No. 218,220, of August 5, 1879, to John Bigelow, for an improvement in sweat-bands for hats and caps) had long been recognized by the trade. A large number of licenses had been taken, some voluntarily, others upon settlement of litigation. The invention had been thoroughly investigated in the patent-office, and there had also been a *quasi* adjudication in its favor in the circuit court of a neighboring circuit. The defendant admitted infringement, but set up want of patentable novelty. The affidavits submitted in support of want of novelty were made, some by licensees, some by affiants who had made contrary statements out of court, and some by persons who in former litigation had been sworn, but had not pointed out these instances of anticipation. Many manufacturers testified that they knew of no prior use. *Held*, that these facts raised a presumption that the patent was valid, and, as the loss to the defendant from granting the injunction would be trifling as compared with that which the complainant would suffer from its refusal, the writ should issue.

In Equity. Bill for infringement. On motion for a preliminary injunction.

*John R. Bennett*, for complainant.

*Edmund Wetmore*, for defendant.

COXE, J. The complainant is the assignee of letters patent No. 218,-220, granted August 5, 1879, to John Bigelow, for an improvement in sweat-bands for hats and caps, popularly known as the "Concealed Stitch Sweat." The complainant is engaged in manufacturing and selling, and in granting licenses to others to manufacture and sell, hat-sweats under various patents owned by it. One of the most valuable of these is the patent in controversy.

The capital stock of the complainant is $300,000. A large number of workmen find employment in manufacturing its products, and its business is prosperous and extensive. This flourishing industry has been built up and sustained through a long period of years by the enterprise, pluck, and energy of the men who have managed the affairs of the complainant. After the introduction of the "concealed stitch sweat" its

utility and value became generally recognized. It was received by the public with increasing favor until, at the present time, the number annually disposed of is almost fabulous. Its popularity is undisputed. All of the leading hat manufacturers, with, possibly, three exceptions, have directly recognized the patent. There are in all 145 licensees. True, that of these some 21 are stockholders in the complainant corporation; true, that in other instances licenses were taken upon the settlement of a litigation in which the validity of the patent was disputed, —a settlement which, certainly, was not cruelly oppressive to the defendants. And yet it is not easy to appreciate the argument that the acquiescence here is not controlling. because many of the prior infringers found it for their pecuniary interest to cease acting in hostility to the patent by taking a license under it. The alternative, either to pay or defend a suit, is the one usually offered to an infringer, and it would seem that a general recognition, obtained after litigation, is at least as controlling as when given voluntarily, without investigation as to the merits of the patent or the chances of successfully resisting it. As was said by Judge CURTIS in *Sargent* v. *Seagrave*, 2 Curt. 553, 556:

"An unsuccessful attempt to interrupt a possession strengthens the presumption which arises from it. It tends to show that persons have found it for their interest to question the right; that they have questioned it, and for a time refused to submit to it; but on inquiry have submitted. Such submission is the most persuasive kind of acquiescence."

In *Caldwell* v. *Vanvlissengen*, 9 Hare, 415, (9 Eng. Law & Eq. 51,) the vice-chancellor says:

"In a case where there has been long enjoyment under the patent, (the enjoyment, of course, including use,) the public have had the opportunity of contesting the patent, and the fact of their not having done so successfully affords at least *prima facie* evidence that the title of the patentee is good; and the court therefore intervenes before the right is established at law." *Chase* v. *Wesson*, 1 Holmes, 274; *Miller* v. *Pulp Co.*, Id. 142; *Hill* v. *Thompson*, 3 Mer. 622.

Without entering into a minute analysis of the manner in which it was obtained, the unquestioned fact remains that to-day acquiescence in the patent is well-nigh universal. This is a genuine, and not a spurious or a manufactured, recognition.

In April, 1880, the patent in controversy was sustained by the circuit court of the district of New Jersey, and an injunction issued. *Greenwood* v. *Bracher*, 1 Fed. Rep. 856. The circumstances of that case, however, were such that the decision can hardly be recognized as a controlling precedent; although it is urged, with some force, that, if there had been any serious doubt as to the validity of the patent, the court would not, at that early date, have granted a preliminary injunction.

The defendant is a corporation which for 15 years has been engaged in manufacturing and selling sewing machines and their attachments. Its connection with the hat-sweat industry is of very recent date. In the latter part of 1886, or the early part of the present year, it commenced stitching the infringing hat-sweats, in a small way, in the city of New York. This business was begun under circumstances which, the com-

plainant vigorously argues, indicate bad faith, and was continued for a few months only. This being the situation, it is quite clear that but slight loss and inconvenience other than that occasioned by the delay of a few months can accrue to the defendant by the issuing of an injunction *pendente lite;* a flourishing business will not be broken up; no large amount of capital will be left idle; few, if any, operatives will be turned out of employment. On the other hand, to deny this motion will paralyze, if not irrevocably destroy, the business of the complainant,—a business which has been built up by long and persistent endeavor, but which, from its very nature, rests upon an unusually sensitive foundation. It is not to be supposed that licensees will continue to pay after the door has been thrown wide open to all. Such altruism is not often met with in the course of patent litigation. These considerations appeal strongly to the discretion of a court of equity. It is thought that this is peculiarly a case in which the court clearly should be satisfied of the rectitude of its position before overthrowing, *in limine,* a patent upon which such extensive interests depend. Even where serious doubts exist, if the court can see that these may be removed, and that the withholding of the injunction will work great injury without corresponding advantage, it should not hesitate to issue the writ. To quote again from *Sargent* v. *Seagrave, supra,* (page 557:)

"The court looks to the particular circumstances to see what degree of inconvenience would be occasioned to one party or the other by granting or withholding the injunction; and whether the defendant has voluntarily placed himself in the position to be subjected to that inconvenience. * * * It was argued that inasmuch as the court, upon an examinaton of the defendant's evidence, has some doubt concerning the validity of the patent, there should be no injunction. But I take it to be settled that sufficient possession, such as I consider to be proved in this case, will outweigh graver doubts than I entertain." *Harmer* v. *Plane,* 14 Ves. 130; *Isaacs* v. *Cooper,* 4 Wash. C. C. 259, 260.

Infringement is not strenuously denied, but it is argued that the patent is void for want of patentable novelty, and that the device disclosed by it has been fully anticipated. It is not the purpose of the present decision to determine these questions, or to discuss them at length, further than to say that the court is not so clearly satisfied that the defendant's positions have been sustained as to justify the withholding of the relief prayed for.

The question of patentable novelty is both important and difficult. It is true that the invention is not a great one, and that in many cases, somewhat analogous upon the facts, patentability has been denied; but it is also true that in others it has been sustained. *Smith* v. *Dental Co.,* 93 U. S. 486, 493-495; *Loom Co.* v. *Higgins,* 105 U. S. 580; *Tilghman* v. *Proctor,* 102 U. S. 707; *Crandal* v. *Watters,* 20 Blatchf. 97, 9 Fed. Rep. 659; *Paper-Bag Co.* v. *Paper-Bag Co.,* 30 Fed. Rep. 63; *Eppinger* v. *Richey,* 14 Blatchf. 307, 312; *Adams* v. *Howard,* 19 Fed. Rep. 317; *Hill* v. *Biddle,* 27 Fed. Rep. 560.

Considering the utility, the long recognition, the thorough investigation of the patent office, (*Shaver* v. *Skinner,* 41 O. G. 232, 30 Fed. Rep.

68,) and the *quasi* adjudication in *Greenwood* v. *Brasher, supra,* it is thought that 'at this point in the litigation, at least, the doubts arising should be resolved in favor of the patent.

Upon the question of anticipation, a number of affiants have sworn to prior use, but some of them have made contrary statements out of court; others have recognized the patent by taking licenses under it; others still were examined years ago, when their interest to defeat the patent was as keen, and their recollection presumably much keener, and they failed to mention instances of anticipation which they now relate with great elaboration and attention to detail. Many active and enterprising manufacturers, who could hardly have missed learning of these instances of prior use, testify that they never heard of them. It surely is a remarkable fact that, if this valuable improvement was known as early as 1865, it should have been permitted to fall into disuse by the trade, which, after the patent, gave it such a cordial reception. The presumptions, invoked by the complainant, arising from these facts, certainly raise a doubt, which, upon this question, should be absent from the mind of the court, in order to overthrow the patent. *Cantrell* v. *Wallick,* 117 U. S. 689, 695, 6 Sup. Ct. Rep. 970; *Coffin* v. *Ogden,* 18 Wall. 120, 124; *Telephone Co.* v. *Telephone Co.,* 22 Fed. Rep. 309, 313. But these questions can best be determined upon the final hearing. It would be most unsatisfactory and unfair to all concerned to attempt to decide them upon affidavits. A question or two put by the cross-examiner will often destroy the entire force of an *ex parte* statement. Both parties should be allowed an opportunity to apply this test.

Without further comment upon the evidence now presented, it is sufficient to say that the considerations referred to lead to the conclusion that the present *status* should be preserved until the final hearing, unless the complainant unreasonably delays the prosecution of the cause; and that to this end an injunction should issue substantially in the language of the restraining order now in force.