## WEST PUBLISHING CO. v. LAWYERS' CO-OPERATIVE PUBLISHING CO.

(Circuit Court, N. D. New York.  January 2, 1893.)

### No. 6,106.

COPYRIGHT—LAW REPORTS AND DIGESTS—INFRINGEMENT—INJUNCTION.

On motion for a preliminary injunction in a suit for infringement of complainant's copyrights in law reports and in a digest thereof, by the publication by defendant of a similar digest, the instances of alleged piracy pointed out amounted to less than 1 per cent. of defendant's book, and while, as to some of them, identity of language raised a presumption, well-nigh conclusive, of copying from complainant's books, defendant contended, as to others, that both parties had copied from the opinions digested, and denied any piracy. It appeared that the parts of defendant's digest, issued semimonthly during the year, had been sent to complainant, who was a subscriber thereto; that the volume for the year, compiled from said parts, was printed and ready for delivery; and that complainant had supplied its customers with its own digest for the year. *Held* that, as the determination of the question of infringement would involve a long and complicated comparison, and an injunction meantime would work irreparable injury to defendant, out of proportion to the injury to complainant from a refusal thereof, the temporary stay previously granted should be vacated, and defendant be restrained only from future infringement, and from selling its digest to any persons other than its regular subscribers and those with whom it had previously contracted to deliver the same; defendant to give bond to keep account of all digests sold, and to pay such damages as might be awarded to complainant.

In Equity.  Suit by the West Publishing Company against the Lawyers' Co-Operative Publishing Company for infringement of copyrights.  On motion for preliminary injunction.  Granted, with leave to defendant to continue to furnish the book alleged to infringe to regular subscribers and others with whom it had contracted to deliver it, upon giving bond to keep account of sales, and to pay such damages as might be awarded to complainant.

The bill set forth complainant's copyrights upon certain volumes of law reports and weekly advance sheets, or parts thereof, edited and published by it in the years 1891 and 1892, and upon the digest covering said reports, entitled "The American Digest, Annual, 1892," and the monthly advance sheets or parts of said digest, also edited and published by complainant in said years, and alleged that defendant, in its business of publishing and selling law books, published and sold a volume, annually, called the "General Digest," of which it published advance sheets and numbers semimonthly, which digest and advance numbers were published and sold in competition with the said copyright books and advance numbers or books of complainant, including its Annual and Monthly Digests; that defendant, knowing that the syllabi or headnotes of complainant were made with special reference to their adaptability and fitness for use as digest items, and that complainant had been so using and intended so to use said syllabi or headnotes, did at different times during the latter portion of the year 1891 and the year 1892, without the consent of complainant, reprint, publish, and sell, and did continuously since publish and expose to sale, and sell, advance numbers of their General Digest, containing statements of fact, syllabi, and headnotes copied from said reports of complainant, and in particular from said advance numbers or books thereof, as well as from said Annual and Monthly Digests.  The bill further alleged, on information and belief, that defendant, in preparing its General Digest for the year 1892, had used and employed principally, as matter therefor, the headnotes or points issued and published in its advance numbers from time to time.

which headnotes or points were largely, and to a great extent, copies of and piracies upon the copyright syllabi, headnotes, or points prepared and edited by complainant, and published in its volumes and advance numbers or books; that defendant had advertised the publication of its General Digest for 1892, and threatened to and was about to issue, publish, and sell the same, so containing infringements upon, copies of, and piracies of the original copyright matter of complainant, to the great injury and irreparable damage of complainant in its business; that in preparing said General Digest for publication, and in preparing the advance numbers thereof, defendant had substantially copied the headnotes and syllabi, as previously prepared and published by complainant, resorting to the devices of transposing clauses, sentences, and paragraphs, using synonyms, and making colorable alterations, while always repeating the substance, often using the exact words, and frequently even entire sentences and entire headnotes verbatim from said original works of complainant, and in many instances omitting to correct even the inaccuracies and errors therein, and had also availed itself of the original work, method, and ideas of complainant in making and preparing complainant's headnotes, and in digesting the cases, without following the exact language used by complainant. So that thereby defendant was enabled to prepare, publish, and sell its pirated publications with greater ease, and at far less expense; that the said General Digest, so about to be published, and the advance numbers thereof, of defendant, were infringements of, and piracies upon, the copyrights of complainant, and said books were made and intended by defendant to take the place of, and as far as possible supersede, the said books and advance numbers of complainant, and especially the said Annual and Monthly Digests of complainant.

With the bill, complainant filed the affidavit of an editor in its employ, which, besides reiterating the charges of the bill, stated that deponent had assisted in the preparation of complainant's said volumes and advance numbers, and was personally familiar with the methods of editing and preparing the same, and was also familiar with the methods of editing, reporting, digesting, and preparing for publication employed by defendant; that the advance numbers of defendant's General Digest consisted principally of the headnotes of the decisions reported in the advance numbers of complainant's reports, and a large majority of the citations or references under the statements of points in defendant's advance numbers of its General Digest are to complainant's reports; that defendant's permanent digest for each year was mainly composed of the same points, statements, or digested matter contained in its advance numbers; that, by a comparison and critical examination of the syllabi or headnotes published in advance numbers of defendant's digest with the syllabi or headnotes made by complainant of the same decisions as published in the advance numbers of complainant's said reports, together with the opinions from which they were taken or digested, deponent had ascertained that defendant had in many instances copied the headnotes and syllabi as previously prepared and published by complainant, resorting to the devices of transposing clauses, sentences, and paragraphs, using synonyms, and making colorable alterations, while repeating the substance, often using the exact words of entire sentences and entire headnotes from the original matter of complainant, and had availed itself of the original work, methods, and ideas of complainant in preparing complainant's headnotes, following the language used by complainant, but sometimes endeavoring to conceal the infringement by transposition of words and clauses, and the use of similar, while avoiding the same, words; and certain examples of said infringements and piracies were set forth, showing the original copyright headnotes or syllabi of complainant, and the matter alleged to infringe the same in defendant's publications, with the further averment that there were numerous other cases or instances of similar infringements or piracies ascertained or discovered by deponent, by his said inspection or comparison, or otherwise known to him, which would more fully and clearly appear by examination and comparison of the advance sheets or semimonthly parts of defendant's General Digest and the General Digest itself for 1892 with the volumes of the reports, or the advance numbers thereof, of complainant.

On the bill and affidavit, filed December 23, 1892, an order to show cause

why an injunction should not issue was granted. returnable December 27, 1892, and staying defendant in the mean time from publishing and selling its General Digest Annual for 1892.

On the hearing of the return of the order to show cause, defendant read and filed the affidavits of the chief editor and assistant editors of the General Digest, to the effect that it was the rule of defendant company, strictly enjoined, that in no case should the editors, in digesting cases and drafting digest paragraphs, make any use of syllabi, headnotes, or digest paragraphs in any publication of complainant, save where such syllabi, etc., were prepared by the court or the judge writing the opinion, and that such rule had been strictly followed by such editors. Defendant also read the affidavits of its treasurer to the effect that complainant's digest, the American Digest Annual, 1892, was already published and distributed to its subscribers, and had its principal sales, while defendant's digest. the General Digest Annual, 1892, was printed and in the hands of the binders, only a few hundred copies having been delivered; that complainant was a regular subscriber to defendant's semimonthly and annual digest, and had regularly mailed to it said semimonthly digest numbers as they were published and issued, and that complainant was entirely familiar with the plan of such digest; that one feature, considered of special value by subscribers, was its early publication, and any delay therein would work irreparable injury to defendant, by loss of sales and loss of credit. and great inconvenience and annoyance to its subscribers, a large proportion of whom had already paid for, and were entitled to, such annual digest; and that the balance of such subscribers had ordered the same upon the agreement that they would remit therefor upon its receipt.

Complainant also submitted, after the hearing, a memorandum showing further instances of piracy and infringement, in addition to the examples set forth in the moving affidavit.

E. Countryman, for the motion.

W. F. Cogswell, opposed.

COXE, District Judge. I have delayed deciding this motion until the last moment before starting for the New York circuit, and have given to its consideration all the time which could be spared from other matters even more pressing. I have reached the conclusion that the temporary stay should be vacated; that the defendant should enter into a bond, if required to do so, conditioned to keep an account of all digests sold and for the payment to the plaintiff of such damages as the court may award in case the final decree is for the plaintiff; that an injunction should issue restraining future infringements of the plaintiff's copyrights, and also restraining the selling of the present digest to all persons except the defendant's regular subscribers, and those with whom it has contracted to deliver copies by agreements made before the service of these motion papers.

I do not pretend that this order does absolute justice, but I think that it approaches as near to that result as any order that can be made, while the matters in dispute are undetermined. My reasons for this conclusion may be hastily summarized as follows: Both parties compile and publish law digests. The moving papers present some 55 instances of alleged piracy in the defendant's digest. Since the argument, another statement, containing 108 similar instances, has been forwarded; making in all 163 alleged cases of piracy. Some of these employ language so nearly identical with the copyrighted language that the presumption is well-nigh conclusive that it was copied from the plaintiff's books. As to others the contention

is made by the defendant that the similarity of language is accounted for by the fact that both paragraphs were copied verbatim from the opinion of the court. It is impossible to verify this contention without a long, wearisome, and complicated comparison, which the court has no time to make, and should not be called upon to make. I am confident that if this examination is sent to a referee it will delay the matter for several weeks at least. The plaintiff having failed to satisfy the court, in view of the defendant's affidavits, that an injunction should issue at once, the court will hardly be justified in permitting the preliminary stay to continue in order that the plaintiff may have time to make a stronger case. If the stay continues it will work great injury to the defendant, for which there is little, if any, redress. Should it subsequently appear that the defendant is right as to a large proportion of the paragraphs in dispute it will be too late to offer any reparation for the serious injury which has been done. The court should be very sure, much surer than it can be at present, that the plaintiff is right before dealing so fatal a blow to the defendant.

The defendant's digest has been issued during the past year in semimonthly pamphlets which have been regularly sent to the plaintiff, who is a subscriber. Their contents, presumably, were known to the plaintiff several months ago. The plaintiff has waited until the defendant's digest is printed and ready for delivery, and now seeks to have the alleged pirated paragraphs stricken out or the entire volume suppressed. If this action had been commenced two months ago the court would have had ample opportunity to determine with accuracy what is and what is not pirated. The defendant would then have been directed to omit objectionable matter, which could have been done without great injury or expense. Now, however, an injunction will compel the mutilation of a completed edition, and, perhaps, a printing of a new edition, with its attending expense and delay. I cannot think that the court will be justified in so harsh a measure where the infringing matter is so small a proportion of the entire work. It is said that the total number of cases digested in defendant's book is 19,000. The disputed paragraphs, therefore, assuming that all are pirated, amount to less than 1 per cent. It is apparent that the damage to the defendant, should an injunction issue as prayed for, would be entirely out of proportion to the damage which the plaintiff will suffer if the preliminary writ is refused. The plaintiff has already supplied its customers with the digest published by it for 1892. It has had no interference from the defendant, and it cannot be maintained, therefore, that the defendant's digests are likely to displace any of the plaintiff's digests or entice away any of the plaintiff's customers.

It is the duty of the court in all these cases to take into consideration the situation of both parties, and not to issue the writ except in the plainest cases, where the result will be irreparable injury to the defendant without corresponding advantage to the plaintiff. It is always wiser, in such cases, to wait for the final proofs.

In Sargent v. Seagrave, 2 Curt. 553, 557, Judge Curtis said:

"The court looks to the particular circumstances to see what degree of inconvenience would be occasioned to one party or the other by granting or withholding the injunction."

In McNeill v. Williams, 11 Jur. 344, the vice chancellor said:

"The court has, of late years especially, given great weight to the consideration of the question, which of the two parties to the dispute is more likely to suffer by an erroneous or hasty judgment of an interlocutory nature against them; and to the consideration also of the very possible if not probable effect which an injunction may have to the defendant's prejudice in an action. I have in this case to weigh, on the one hand, the suspicious nature of the defendant's case, for suspicious, I confess, upon the present materials, it appears to me to be, and the probable mischief from not interfering at present in his favor, if he should ultimately prove to be right; and, on the other hand, the possibility—the rational possibility—for I am unable to bring myself to deny the rational possibility—that the plaintiff may be right. I have also to consider the mischief generally that may be done by interfering in this stage of the cause if the defendant shall ultimately appear to be right, including particularly the possible prejudice which may be created against them in an action by the existence of an injunction. Upon the whole, I think the ends of justice in this case will be better answered by abstaining from granting the injunction at present."

In Bramwell v. Halcomb, 3 Mylne & C. 739, the chancellor said:

"It is obvious that it is the interest of both parties that the injunction should be dissolved; for if, in consequence of piracy, the defendant is, in fact, selling the plaintiff's work, the plaintiff will have the profits of the publication; but if, on the contrary, no piracy has been committed, a very great hardship is inflicted on the defendant."

In Spottiswoode v. Clarke, 2 Phil. Ch. 157, the facts were in many respects similar to those in the case at bar.   The chancellor said:

"But the greatest of all objections is that the court runs the risk of doing the greatest injustice in case its opinion upon the legal right should turn out to be erroneous. Here is a publication which, if not issued this month, will lose a great part of its sale for the ensuing year.   If you restrain the party from selling immediately you probably make it impossible for him to sell at all.   You take property out of his pocket and give it to nobody.   In such a case, if the plaintiff is right, the court has some means at least of indemnifying him, by making the defendant keep an account; whereas, if the defendant be right, and he be restrained, it is utterly impossible to give him compensation for the loss he will have sustained. And the effect of the order in that event will be to commit a great and irremediable injury."

See, also, High, Inj. § 1026; Walk. Pat. § 702; Drone, Copyr. pp. 517, 518.

It is thought that the plaintiff will be fully protected if its copyrights are respected in the future and damages are paid for whatever injury it may have sustained from past infringements, and especially so, if the defendant is enjoined from selling its digests to new customers until it has proved its innocence of the present charge.