WELSBACH LIGHT CO. v. BENEDICT & BURNHAM MANUF'G CO.

(Circuit Court, D. Connecticut.   October 9, 1897.)

1. PATENTS—PRELIMINARY INJUNCTION—ACQUIESCENCE.
General acquiescence in the validity of a patent is not of so much weight on the question of a preliminary injunction, when the patent is of a subordinate character, so that there has been little temptation to infringe until after it is supposed that the principal patent is no longer in force.

2. SAME—DOUBTFUL PATENTS—CLEAR INFRINGEMENT.
The rule that, when infringement is clear, and the injury to complainant by refusing the injunction will be greater than the injury to defendant by granting it, some doubts as to the validity of the patent should be resolved in its favor, is not of great force when the alleged invention is of a subordinate or comparatively unimportant character, and the court has very serious doubts on the question of invention.

3. SAME—INCANDESCENT GAS LAMPS.
The Welsbach patent, No. 409,530, for an improved incandescent gas lamp, designed to be used with the Welsbach incandescent hood, held invalid, on motion for preliminary injunction, as to claim 3, which is for a combination with a Bunsen burner of a shield suspended around the air inlets thereof, and as to claim 5, which is for a gas burner and a chimney support or gallery with a vertically adjustable rod supported by the gallery, and an incandescent hood suspended from the rod.

This was a suit in equity by the Welsbach Light Company against the Benedict & Burnham Manufacturing Company for alleged infringement of the Welsbach patent for an improved incandescent gas lamp. The cause was heard on a motion for a preliminary injunction.

John K. Beach and John R. Bennett, for complainant.
A. M. Wooster and M. B. Philipp, for defendant.

SHIPMAN, Circuit Judge. This is a motion for a preliminary injunction against the further infringement by the defendant of claims 3, 5, and 6 of letters patent No. 409,530, dated August 20, 1889, issued to Carl Auer Von Welsbach, assignor to the complainant, for an improved incandescent gas lamp. In 1885, the patentee had patented in England the well-known Welsbach hood or mantle, which was also subsequently patented in this country, and which was styled in his English patent "an illuminant appliance in the form of a cap or hood, to be rendered incandescent by gas and other burners, so as to enhance their illuminating powers." This invention underwent a most thorough investigation in the English courts; the patent was sustained, and the invention was declared by Mr. Justice Wills to have accomplished "what has long been a desideratum, what has been attempted before, but always with an utter want of success, and it was for the first time brought within the range of practical manufacture the production of a brilliant light by incandescence within an ordinary gas flame." The lamp which is the subject of the patent in suit was designed to hold and to heat this hood, and is, in its details, exceedingly well adapted to bring the Welsbach illuminant into successful use in houses, and also in places of business; but the patent was not limited to the use of any particular hood or mantle. Its claims to patentability are therefore liable to be disputed by pre-existing lamps which were made for the purpose of raising to incandescence some

other refractory material by means of a gas flame; and it appears from the "file wrapper and its contents" that this was fully understood by the inventor when the application was making its way through the patent office. The patent has never before been the subject of litigation. The Welsbach system of lighting has had great success in this country. Over two millions of lamps made under this patent have been sold, and neither patent was seriously infringed until the spring of 1897. About that time it was rumored that the hood or mantle patent had expired by reason of the expiration of a Spanish patent for the same invention, and forthwith infringement of each patent commenced. Suits for infringement of the hood patent are now pending in the Southern district of New York.

It is strongly urged that the public has admitted the validity of the patent in suit, and that the complainant's rightful possession of an exclusive right to make the brass part of the Welsbach lamp has been clearly acknowledged. It must be recollected that the Welsbach system consists of the brass lamp and the hood; that the latter is the important member of the system, and gives to it its success; that the brass part of the lamp is for the purpose of making the hood operative; and that, so long as the•validity of the hood patent was admitted, there was little or no reason for an attempt to infringe the patent in suit. Acquiescence in the validity of this patent has not, therefore, the importance that it generally has, and which it had in the early and well-known case of Sargent v. Seagrave, 2 Curt. 553, Fed. Cas. No. 12,365. I am therefore compelled to examine the patent by the light which has been thrown upon it by the affidavits and the other papers which were presented upon the hearing of the motion. The patent contains six claims, which are as follows:

"(1) The combination of a burner tube, provided with a cap having a vertically projecting cone, 13, surrounded by an inner annular series of perforations, 14, and an outer annular series of radiating slots, 15, a hood of refractory incandescent material suspended above said burner cap, and a chimney surrounding said hood, substantially as described.

"(2) The combination, with a burner tube, 5, and gallery, 8, having lugs, 23, and set screws, 24, located on a laterally extended portion of the gallery body, of the chimney, 19, the hood, 20, and the vertically adjustable rods, 21 and 22, substantially as described.

"(3) The combination of a vertically perforated thimble having a gas inlet, a perforated disk supported by said thimble, a Bunsen burner having lateral air inlets, and a shield located around the burner air inlets, substantially as described.

"(4) The combination of a Bunsen burner having lateral air inlets, a ring shrunk onto the burner tube above the air inlets, and a shield suspended from said ring and surrounding the air inlets of the burner, substantially as described.

"(5) The combination, with a gas burner and a chimney gallery, of a vertically adjustable rod supported by the gallery, and an incandescing hood suspended from said rod above the burner, substantially as described.

"(6) The combination, with a gas burner, a chimney, and an incandescing hood suspended in said chimney, of a gallery having converging ribs, 8a, arranged at intervals, substantially as described."

The defendant's burner does not have the vertically projecting cone, 13, of claim 1, nor the vertically adjustable rods, 21 and 23, of claim 2, and its shield is not suspended as required in claim 4. It does plainly infringe claims 3, 5, and 6, and the question upon this motion

is whether the validity of those claims can be so clearly ascertained that an injunction ought to issue. Claim 3 is the one of importance. It relates to the parts of the gas burner which produce the necessary smokeless and almost nonluminous hot flame. The patentee used, as is stated in the claims, the Bunsen burner, which had been for many years before the date of his invention a well-known form of gas burner for heating purposes, and which is said to have been invented by the chemist Bunsen. In this burner, gas and air are permitted to enter through different orifices or openings into the same tube or mixing chamber, where the mingling takes place; and when the gas is ignited it has become thoroughly mixed with the air, so that "all parts of the flame are supplied with sufficient oxygen to insure the immediate combustion of the carbon." The same general system of independent orifices for the admission of air and gas into a mixing chamber is used in most of the lamps for heating refractory material to incandescence. Claim 3 names four elements, as follows: (1) A vertically perforated thimble, having a gas inlet. This thimble is threaded for attachment to the gas fixture. (2) A perforated disk, secured to the upper end of the thimble, "to divide the gas supply into jets, and facilitate the mixture with the supply of air." (3) A Bunsen tube, having lateral air inlets. (4) A shield located around the air inlets, which the specification says may be used "if desired." This shield also has air inlets in a casing around the inlets of the burner tube, so that the supply of air can be regulated and modified. Divers earlier patents were introduced by the defendant to show either that these various elements were well known, and had been in some way combined before, or else were in such common use that their combination was not a patentable one, but I have directed my attention to what is disclosed in the proceedings in the patent office, in the specification, and in the patent to Charles Clamond, No. 282,053, dated July 31, 1883, to which reference was made by the patent office. The patentee, on October 15, 1888, asked for the allowance of the following, as claim 3:

"The combination, with a Bunsen burner having lateral air inlets, of the shield, 6a, suspended around said burner air inlets, substantially as described."

The existing claims 3 and 4 were claims 4 and 5 in this application. The office rejected claim 3, as applied for, by reason of the Clamond patent, and rejected claims 4 and 5 because they were modifications of the same general construction of burner. The applicant canceled claim 3, "though it is not believed to be met by the patent to Clamond cited, but to facilitate allowance of the remaining claims"; and said of claims 4 and 5 that the former covers "a combination including a shield located around the burner air inlets, while the latter is for a combination embracing a ring shrunk into the burner tube above the air inlets, and a shield suspended from said ring, and surrounding the air inlets of the burner." The claims as they now stand were then allowed. Thus the rejection of a claim for a Bunsen burner and a shield around the air inlets was acquiesced in, and the present claim 3 was allowed, because it included the combination of a Bunsen burner, shield, thimble, and perforated disk. The question is whether the claim describes anything more than a Bunsen burner plus a shield;

or, in other words, whether the combination as claimed contained anything which is not a part of a Bunsen burner when in actual use. The apparent contention of the complainant is that the perforated disk, which is a very thin plate, and contains three minute holes, is an addition to, or is such a modification of, the ordinary Bunsen burner that it can be considered a distinct member of the combination, and that this improvement is valuable. The specification says "that the number and size of the perforations in the disk * * * can be varied as required according to the quality of the gas." It says also that "it is advantageous to cause the combustible gas used for the burner to issue through a hole or holes in a very thin sheet-metal plate, such as the perforated disk, 2, and not through a plate of from one to one and one-half millimeter in thickness, as in the ordinary Bunsen burner." It thus appears that neither the size nor the number of the perforations was regarded as of patentable importance. It furthermore appears that a perforated plate, or some other contracted orifice for the transmission of gas, was a part of an ordinary Bunsen burner, and that a thin plate was regarded as preferable to the one in general use, but that a thin plate was not designated, either in the specification or in the claims, as a part of the patented invention. After reading the specification, and the history of the patent upon its journey through the patent office, claim 3 seems to me to have been an attempt to magnify the combination of one of the common forms of an old burner and a shield into a novel combination of several elements, and thus to be patentable.

Claim 5 is for a combination of a gas burner, not necessarily a Bunsen burner, and a chimney support or gallery with a vertically adjustable rod supported by the gallery, and an incandescing hood suspended from the rod. When this very simple means of suspending the hood is looked at in the complainant's lamp, there seems to be nothing of an inventive character in the combination.

Claim 6 is for a chimney gallery or support having converging ribs, in combination with a gas burner, chimney, and incandescing hood suspended in the chimney. The important part of this combination, as appears from the specification, is the converging ribs of the chimney gallery. This is a matter of mechanical detail, which is not material, and which can, apparently, be changed without difficulty; and I should not think it worth while to issue an injunction in the present stage of this case merely for an infringement of this claim.

The complainant pressed its equities for an injunction by reason of the deliberate conduct of the defendant in entering into a contract to make the brass portion of the Welsbach lamp with notice of the complainant's possession of a patent, and after it had made these lamps for the complainant for eight or nine years; and presented the proposition that, when infringement is clear, some doubts should be resolved in favor of the patent, especially when injury to the complainant by a refusal will be greater than the injury to the defendant will be by granting the injunction. The force of these propositions in a case proper for their application is acknowledged, but their applicability depends upon the strength of the doubts. For example, the hood patent, which is the most important part of the Welsbach sys-

tem, has been respected in this country for many years, and the unique character of the invention, and its importance as a great aid to domestic comfort, have been universally recognized. Upon a motion for a preliminary injunction against the infringement of the patent in this country, even if there had been no adjudication in England, a court would naturally think that doubts in regard to validity were overborne by the weight of the considerations which have been mentioned. But this patent has not that distinctive kind of character, and, while I know that the issuance of an injunction would be a serious advantage to the complainant in its efforts to protect its business and prevent an onslaught upon it, yet, when I have so serious doubts as I have in regard to the validity of the contested claims of the patent, I do not think that I ought to enjoin against their infringement. Such an interference with the business of one manufacturer, in order to strengthen the position of another, pending an attack upon the validity of its patent, though it is being attacked by its old friends, seems to me an undue stretch of the power of a court of equity. The motion is denied.