The NORWICH PHARMACAL COMPA-
NY, a New York Corporation,
Plaintiff,

v.

VETERINARY CORPORATION OF
AMERICA, a New Jersey
Corporation,

and

Veterinary Corporation of Georgia, a
Georgia Corporation, Defendants.

Civ. A. No. 692.

United States District Court
M. D. Georgia,
Athens Division.

Sept. 23, 1968.

Jos. W. Popper, Jr., Macon, Ga., Bradford S. Allen, Norwich, N. Y., for plaintiff.

William T. Gerard, Athens, Ga., A. J. Nydick, Hampton Bays, N. Y., for defendants.

MEMORANDUM OPINION RE: MOTION TO DISMISS AND MOTIONS OF EACH SIDE FOR PRELIMINARY INJUNCTION

BOOTLE, Chief Judge:

This is an action for an alleged infringement of plaintiff's U. S. Patent No. 2,742,462 issued to plaintiff on April 17, 1956. This court has jurisdiction under Title 28, U.S.C.A. section 1338(a) and venue is based upon 28 U.S.C.A. section 1400(b), this district being where the alleged acts of infringement have been and are taking place. Plaintiff alleges that the defendants have willfully infringed this patent by using and selling and by actively inducing others to use and sell "furazolidone" a compound which allegedly embodies the invention covered by said patent. Plaintiff alleges that said infringement will continue unless enjoined and prays for injunctive relief, an accounting for damages, treble damages for willful infringement, costs and attorneys fees.

The case is in default as to Veterinary Corporation of America. Veterinary Corporation of Georgia, hereinafter called defendant, has not as yet answered, having filed a motion to dismiss supported by a brief arguing that the patent is invalid because it does not comply with 35 U.S.C.A. section 112 which requires a specification to teach the public (1) how to make and (2) how to use the invention claimed. This motion to dismiss has been thoroughly briefed by both sides, is found without merit and is hereby overruled.

The plaintiff has filed its written motion for a preliminary injunction supported by its verified complaint, affidavits of A. L. Andrews, president of Hess and Clark, plaintiff's distributor to the poultry industry, Guy Marsters, director of chemical sales for plaintiff, and Bradford S. Allen, assistant secretary and patent counsel for plaintiff. Said motion prays for a preliminary injunction restraining Veterinary Corporation of Georgia and all of its officers, sales agents and employees, pending a final adjudication on the merits of this litigation or until dissolved by an appropriate order of this court:

(a) From directly or indirectly manufacturing, using or selling the compound commonly known as furazolidone, claimed in United States Letters Patent No. 2,742,462, in the United States, its territories and possessions, unless such furazolidone is manufactured or licensed, under the aforesaid patent, by the plaintiff;

(b) From actively inducing others or contributing to the acts of others, within the definition contained in 35 U.S.C. § 271(b) and (c), to commit any act of infringement, or contributory infringement, of said patent in suit;

(c) From directly or indirectly importing, or from actively inducing or conspiring with others to import, the compound commonly known as furazolidone, into the United States, its territories and possessions, for any purpose, including the sale and export of said compounds to persons, firms or corporations located here or in foreign countries.

The defendant, Veterinary Corporation of Georgia, countered with its written motion for preliminary injunction to enjoin plaintiff, or any one in privity with it, from interfering, directly or indirectly, with the business of the defendant, Veterinary Corporation of Georgia, or molesting, or threatening or bringing any action or proceeding against any customer of this defendant. Said counter motion is supported by affidavits of John W. Foster, Professor, School of Veterinary Medicine, University of Georgia, and Dr. Robert A. McRorie, Professor of Biochemistry, Uni-

versity of Georgia. In opposition to plaintiff's motion for preliminary injunction and in support of its counter motion for preliminary injunction, the defendant urges the following grounds:

(1) Claim I is invalid because it engrosses millions of chemical compounds.

(2) All claims of the patent are invalid because plaintiff obtained the patent with knowledge and deceptive intention that Claim I covers millions of chemical compounds; engrosses a vast unknown area; and confers power to block off areas of scientific research and development.

(3) All claims of the patent are invalid because the patent upon its face fails to teach how to use the alleged invention.

(4) All claims of the patent are invalid because the patent falsely asserts utility in the treatment of typhoid fever.

Said motion and counter motion for preliminary injunctions have been thoroughly briefed and are now ripe for decision.

Although the defendant, Veterinary Corporation of Georgia, has filed four briefs in this case, one on July 15, 1968, another on August 8, 1968, both relating to its motion to dismiss, and one on August 12, 1968, and another on September 6, 1968, both relating to the two motions for preliminary injunction, it has asked "that a hearing be held on plaintiff's motion for preliminary injunction." In accordance with our local rule of September 2, 1960 that all motions will be heard on affidavits and written briefs and decided by the court without a hearing unless otherwise ordered by the court on its own motion, or in its discretion upon request of counsel, said request for a hearing is hereby denied. The law is that the court in its discretion can hear a matter of this kind by affidavits and briefs. See 3 Walker on Patents (1937 ed.) § 770, page 2083. Moreover, a full hearing on the applica-

tions for preliminary injunctions would amount to a trial on the merits, for which it does not appear that the parties are yet ready, the defendant not having yet even filed its answer.

This court finds and concludes that plaintiff's motion for preliminary injunction should be granted and that defendant's counter motion for preliminary injunction should be denied. This memorandum opinion is intended to suffice as findings of fact and conclusions of law.

Furazolidone is the compound that is described in Claim No. 2 of the patent in suit (Andrews' affidavit, paragraph 9). Hess and Clark is a major distributor of defendant for the marketing of furazolidone products to the proprietary veterinary field in general and to the poultry and swine feed industry in particular. This distributor markets furazolidone in several products under the trademark *nf–180* for a premix containing 11% furazolidone. The sales of *nf–180* incorporating furazolidone as an active ingredient met with early commercial success, reaching the multi-million dollar level in 1956. Commercial success continued and sales increased in the interim years now exceeding nine million dollars. The majority of principal feed companies in the United States purchase furazolidone feed concentrates from Hess and Clark who purchase solely from defendant and many more purchase furazolidone feed concentrates from distributors of Hess and Clark. Substantial sums have been spent by Hess and Clark in advertising, promoting and selling these furazolidone products. More than 250 people are now employed by Hess and Clark in the promotion, sales and distribution of their products of which furazolidone products are the most significant.

Plaintiff has manufactured and supplied all of the furazolidone sold in the United States to date with the exception of small quantities involved in isolated incidents of infringement of plaintiff's patent in suit. Plaintiff has not licensed anyone to manufacture, use, sell

or distribute furazolidone within the United States except for the obvious implied license to Hess and Clark to resell the furazolidone which plaintiff sells to it. Despite the widespread commercial success of furazolidone plaintiff knows of no other person or firm in the United States that has made or is making furazolidone within the United States although the drug industry is generally highly competitive. Any possibility of weakness in a commercially significant patent normally develops fierce competition from generic-drug suppliers. For instance, when the Federal Trade Commission indicated that the patent covering tetracycline may have been improperly granted, numerous suppliers, including McKesson and Robbins, entered the field of generic-tetracycline distribution. But McKesson and Robbins fully respects and acquiesces in the patent in suit.

Even though furazolidone that would infringe the patent in suit is available from foreign sources at significant savings, there is no person or firm offering it to the trade and the industry is not seeking it for use in the United States. There have been only a few isolated instances of infringement such as that on the part of the defendant in this case, and plaintiff has vigorously protected its rights under the patent in suit, promptly in all instances bringing infringement suits where necessary and appropriate as will be more fully stated later.

The poultry-growing industry is now largely comprised of integrated business enterprises, many of which gross more than 40 million dollars in sales each year. Some spend from $50,000 to $150,000 to medicate their poultry with furazolidone. When the price of poultry meat is low there is significant pressure on each grower to cut costs and there is strong economic incentive not to respect a patent for feed medications. Against that background the patent in suit has been acquiesced in for more than 10 years during which it has had outstanding commercial success.

Ralston Purina Company, a leader in its field, uses enormous quantities of feed medication for poultry. Its drug costs are very large and savings are important to it. It does business in the United States, Canada and Mexico. In Canada plaintiff's patent protection is limited to certain *processes* for the manufacture of furazolidone (as distinguished from its protection in the United States upon the chemical compound *per se* no matter how it is manufactured). So it is that in Canada Ralston has obtained an alternate source of furazolidone from an overseas supplier who purports to manufacture the compound by a different process that does not infringe plaintiff's Canadian patents. Though that matter is in litigation in the Canadian courts, Ralston is still proceeding with its alternate source for its Canadian needs. Nonetheless Ralston respects and fully acquiesces in the patent in suit.

■ In addition to this widespread respect and acquiescence, adequate in itself to support issuance of this preliminary injunction, the special presumption of the validity of this patent is further reinforced by the fact that the patent has been the subject of successful law suits in numerous judicial districts. There have been 52 civil actions filed by plaintiff alleging infringement of this patent. These have been filed in 26 separate Federal districts. In 38 of these actions injunctions have been entered by consent against 63 named defendants. Only 5 of the 52 actions have been terminated by entry of an injunction by default. One of the 52 actions was terminated by a granting of plaintiff's motion for summary judgment incorporating a judicial conclusion of law that this patent is good and valid in law and infringed by the manufacture, use or sale of the chemical compound known as furazolidone.

There are six actions, of the fifty-two, that are still pending. Of these six:

I. Two have preliminary injunctions entered enjoining further infringements of this patent during pendency of the

actions. These are cases numbered 35 and 44 on Exhibit B of Bradford S. Allen's affidavit.

II. Two are suppliers to or customers of the defendants enjoined in the aforesaid cases 35 and 44.

III. One case, numbered 34, is in the midst of settlement discussions that have been protracted by a lengthy illness of one of the defendants.

The affidavit of B. S. Allen points out the extent to which the plaintiff has enforced its rights in court, enjoining numerous persons and firms from further infringement, recovering substantial sums of money for its attorney's fees and investigative expenses incurred and destroying large quantities of infringing merchandise in possession of the defendants. In none of these cases is there a decision impugning the validity of the patent. All of those cases terminated have been completely successful to the plaintiff. In two of the cases, in separate judicial districts, motions by the defendants for summary judgment asserting the invalidity of the patent, have been denied—establishing that there is no apparent infirmity in this patent. Following denial of these motions, even these two cases were terminated very successfully to plaintiff with injunctions, money payments and surrender of infringing merchandise. Many temporary restraining orders have been issued for protection of the plaintiff under this patent including one issued by Judge Hooper of the Northern District of Georgia and another issued by Judge Clayton of the Northern District of Mississippi. Judge Smith stated, in granting the contested motion for a preliminary injunction against International Brokers, Inc., which was started by a man who was president of the Veterinary Corporation of America in early 1967, "This Court could continue at great length on the adequacy of the plaintiff's showing in this regard", referring to the widespread public acquiescence of this patent.

Plaintiff owns the patent in suit. This is shown by affidavit of B. S. Allen

and apparently is not questioned by defendant.

Defendant has infringed said patent and Claim 2 thereof by selling in the Middle District of Georgia its furazolidone-containing product and shipping same to E & W Biological Company at Riverside, California. This infringement is shown by affidavit of B. S. Allen pages 7 and 8 and is apparently not questioned by defendant. The International Brokers, Inc. noted as case 35 in Exhibit B to Mr. Allen's affidavit, against whom a preliminary injunction has been entered in the Northern District of Georgia, is the corporate business extension of Mr. Allan Friedman which he started in the Spring of 1967 for the purpose of selling infringing furazolidone. Before starting International Brokers, Inc., Mr. Friedman was the president of Veterinary Corporation of America, the defendant herein as to which this case is in default. The Veterinary Corporation of Georgia and the Veterinary Corporation of America do or did business from the same premises in Athens.

 Defendant is a newcomer into this furazolidone distribution field having been chartered as a corporation on June 27, 1966. It is a small corporation without published financial information. It is unlikely that an adequate accounting or enforcement of a substantial money judgment could be achieved. Defendant has not presented to the court any financial responsibility on its part. Continued infringement by defendant would result in irreparable loss and injury to plaintiff. See 3 Walker on Patents (1937 ed.) § 793, page 2113. A correct balancing of the equities requires that defendant be preliminarily enjoined as prayed. If it ultimately prevails in this case its entry into this field will simply be delayed until all competitors may come in simultaneously and a bond should protect its interim loss, if any.

The standards governing the issuance of a preliminary injunction in patent litigation are set out in 3 Walker on Pat-

ents (1937 ed.) beginning at section 773, page 2085. All these standards are met by plaintiff in this case.

■ 1. There is a presumption that the patent is valid. There is much more here than merely the statutory presumption resulting from issuance. 35 U.S.C.A. section 282. There is the further special presumption resulting from long "public acquiescence" in its validity. See Orr v. Littlefield, 1 Woodbury and Minot 13, Fed.Cas.No.10,590, C.C.N.H. (1845); Blount v. Societe Anonyme Du Filtre, Etc., 53 F. 98, 102 (6th Cir. 1892); Crescent Specialty Co. v. National Fireworks D. Co., 219 F. 130 (6th Cir. 1915); Rosenberg v. Groov-Pin Corp., 81 F.2d 46 (2d Cir. 1936). The quite considerable successful litigation carried on by plaintiff in enforcing its patent rights, while perhaps not sufficient to show validity by reason of adjudication in contested litigation, nonetheless buttresses plaintiff's right to claim validity because of public acquiescence. See 3 Walker on Patents (1937 ed.) § 778, page 2094.

2. There is more than a strong presumption that defendant has infringed plaintiff's patent.

3. There is more than a strong presumption that plaintiff has title to the patent.

Moreover, without a preliminary injunction there would be continued infringement by defendant and this continued infringement would result in irreparable injury, damage, and loss to plaintiff. This is particularly true here (1) because of the extremely close margin of profit (sometimes absent entirely) in the poultry industry and the economic necessity of poultry people to cut costs, and (2) because of the small capitalization of defendant ($10,000.00) and the absence of any representation or showing on its behalf of financial responsibility.

Then too, obviously the *status quo* should be preserved so as to avoid the certainty of irreparable loss to plaintiff.

See Western Electric Co. v. Cinema Supplies, 80 F.2d 111 (8th Cir. 1935).

And, as above indicated, a balancing of conveniences, or inconveniences, to the plaintiff if the preliminary injunction is not granted and to the defendant if it is granted, dictates that this balance is in favor of the issuance of the preliminary injunction as prayed by plaintiff. See Ohio Oil Co. v. Conway, 279 U.S. 813, 815, 49 S.Ct. 256, 73 L.Ed. 972, 973 (1929); Covert v. Curtis, 25 F. 43 (C.C.N.D.N.Y.1885); Hat-Sweat Manuf'g Co. v. Davis Sewing-Machine Co., 32 F. 401, 402 (C.C.N.D.N.Y.1887); Blount v. Societe Anonyme Du Filtre, Etc., 53 F. 98, 101 (6th Cir. 1892); Crescent Specialty Co. v. National Fireworks D. Co., 219 F. 130, 132 (6th Cir. 1915).

Accordingly, a preliminary injunction is granted against further acts of alleged infringement of said patent by the defendant, its officers, sales agents, and employees and those controlled by or in active concert or participation with the defendant. This holding should in no way be interpreted as a prejudging of the ultimate issues in this litigation on the presentation of evidence at final trial.

Let counsel for plaintiff prepare and submit:

1. An order overruling defendant's motion to dismiss complaint.

2. An order denying defendant's prayers for a preliminary injunction.

3. A specific preliminary injunction against defendant, its officers, et al, as prayed for by plaintiff and in compliance with Rule 65, submitting this injunction first to counsel for defendant who shall have five days for suggestions as to form.

Plaintiff is required to post a $5,000.00 bond to cover the possibility of defendant's ultimate prevailing in this litigation. This amount is subject to such changes as will be dictated by ensuing events.